# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

MARK HACKNEY, Representative
for the ESTATES OF AMANDA
HACKNEY, MARKEESE DORTCH,
and SHA'TARI RAZOR;
SAMANTHA JORDAN, CYNTHIA
JORDAN, Representatives for the
ESTATE OF SHAMIKA JORDAN

     Plaintiffs,                            Case No.

v.                                        Hon. Robert J. Jonker

MICHIGAN DEPARTMENT OF
ENVIRONMENT, GREAT LAKES,
& ENERGY, and its Director
LIESL CLARK, Individually
and in her official capacities;
CITY OF BENTON HARBOR, and its
PUBLIC SAFETY DEPARTMENT;
MAYOR MARCUS MUHAMMAD,
Individually and in his official capacities;
CITY MANAGER, ELLIS MITCHELL,
Individually and in his official capacities;
FIRE MARSHALL, BRIAN
KAZMIERZAK, Individually and in
his official capacities; PUBLIC
SAFETY DIRECTOR, DANIEL E.
MCGINNIS JR.; Individually and in

his official capacities; CHIEF CODE
COMPLIANCE OFFICER, MAURICE
BRUCE; Individually and in his official
capacities; ST. JOSEPH PUBLIC SAFETY
DEPARTMENT; WESTERN
MICHIGAN UNIVERSITY SCHOOL
OF MEDICINE MEDICAL EXAMINER
AND FORENSIC SERVICES and its
Director DR. JOYCE DEJONG, individually
and in her official capacities; and
any unknown, yet to be discovered liable
persons or entities.

      Defendants.

John R. Beason III, Esq.
The J.R. Beason Firm PLLC.
Attorney for the Plaintiffs
(269) 213-1426
JRBeason3@TheJRBeasonFirm.com

(1)

## **PLAINTIFF'S COMPLAINT AND REQUEST FOR DAMAGES**

    Plaintiffs, representatives of the ESTATES OF SHAMIKA JORDAN, AMANDA HACKNEY, MARKEESE DORTCH, and SHA'TARI RAZOR, comes now through counsel, and brings this action for wrongful death, state created emergency, disparate treatment, violations of the Benton Harbor City Code, the

"Kyle Ray Hornings Act", and gross negligence against the Defendants: the State of Michigan's department of Environment, Great Lakes, and Energy, and its Director Liesl Clark, the City of Benton Harbor, Mayor Marcus Muhammad, its Public Safety Department, Public Safety Director Daniel E. McGinnis, Fire Marshall Brian Kazmierzak, Chief Code Compliance Officer Maurice Bruce, the St. Joseph Public Safety Department, the Western Michigan University School of Medicine Medical Examiner and Forensic Services, and its Director Dr. Joyce deJong, individually and in their official capacities.

(2)

## INTRODUCTION

This is a Civil Action asserting claims under federal and state law alleging violations of equal protection, due process, equating to disparate treatment, substantiating gross negligence, and causing wrongful death and intentional infliction of emotional distress, in violation of the U.S. Const. Amend. I, U.S. Const. Amend. XIV, U.S. Const. amend. V, 42 U.S.C. § 2000a, 42 U.S.C. § 2000d, MI Const. Art 1 §17, M.C.L. § 325.1015, M.C.L. § 325.1019, M.C.L. § 325.1021, M.C.L.  § 750.478, M.C.L. § 600.2959, and M.C.L. § 600.2922, M.C.L. § 52.209, M.C.L.  § 333.10104, M.C.L. § 333.10105, M.C.L.  § 333.10107, Mich.

Admin. Code R. 325.11105, and Benton Harbor City Code Sec. 13-3, 20-70, 20-72, 20-176. Plaintiffs request a jury trial, an award of compensatory and exemplary damages, as well as reasonable attorney fees and cost pursuant to M.C.L. § 600.6305, and 42 U.S.C.A. § 1983.

(3)

## JURISDICTION AND VENUE

This Court has jurisdiction over all causes of action set forth in this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C § 139, as the plaintiffs pose federal questions of law and the Defendants reside in the Counties of Berrien, Kalamazoo, and Ingham, in the State of Michigan. The occurrence of the significant and relevant incidents giving rise to this complaint took place in Benton Harbor, MI, County of Berrien, and Kalamazoo, MI, County of Kalamazoo, within the jurisdiction of this Court.

(4)

## THE PARTIES

Plaintiffs are citizens of the State of Michigan and reside in the City of Benton Harbor, MI, in the County of Berrien.

(5)

Defendants; City of Benton Harbor, Benton Harbor Public Safety Department, Mayor Marcus Muhammad, Public Safety Director Daniel E. McGinnis, Fire Marshall Brian Kazmierzak, St. Joseph Public Safety Department, the State of Michigan's Department of Environment, Great Lakes, and Energy, and its Director Liesl Clark, and the Western Michigan University School of Medicine Medical Examiner and Forensic Services and its Director Dr. Joyce deJong are all citizens and entities of the State of Michigan with the competency and capacity to sue and be sued.  At the time of the alleged conduct, the Defendants were residents and employees residing and working in Benton Harbor, MI, County of Berrien and Kalamazoo, MI, County of Kalamazoo.  All Defendants currently retain domicile and a residence in Western Michigan.

**FACTS GIVING RISE TO PLAINTIFF'S COMPLAINT**

(6)

In the early morning hours of November 1st, 2021, the Plaintiff, Mr. Mark Hackney awoke to his home ablaze.  At approximately 5:00 am in the morning, Benton Harbor Public Safety officers arrived on fire trucks without water and

rummaged through the neighborhood looking for working fire hydrants, eventually

finding one on the other side of a vacant lot.  Despite attaching hoses to fire

hydrants in the community, Benton Harbor Safety Officers waited for the arrival of

St. Joseph Public Safety officers and their functioning fire prevention trucks.

Benton Harbor City natives and residents Amanda Hackney, and her children

Markeese Dortch, and Sha'Tori Razor died in the fire after failing to receive the

public accommodation of a functioning public water system and adequate public

safety department.

(7)

Approximately six months later, on May, 3rd, 2021, the home at 1111 McAlister St,

Benton Harbor, MI, set ablaze with Shamika Jordan inside.  Witnesses report

Benton Harbor Public Safety Officers scurrying through the community looking

for functioning sources of water, eventually finding one three blocks away near a

gas station.  According to the incident report, thirteen officers arrived on the scene.

Out of those thirteen contained only one firefighter, one training officer, and one

inspector/investigator.  Witnesses report that no BHPS officers attempted to enter

the home or perform a search or rescue.

(8)

According to the incident report, instead of attacking the fire and or entering the home to perform a search and rescue, Benton Harbor Public Safety officers took actions to "prepare for interior attack." St. Joseph Public Safety officers and their fire engine arrived on the scene, and at that point, the home was entered by the SJPS officers. Witnesses report that the deceased, Ms. Shamika Jordan, was taken from just inside the front door and literally slung and thrown onto the front porch of her scorched home, handled with disrespect, left naked, and uncovered for an egregious and undignified amount of time.

(9)

On page seven of the incident report, Ms. Jordan's cause of death is listed as "exposed to fire products." Her "primary apparent symptom" is listed as "burns and smoke inhalation." Shamika's mother, aunt, and other witnesses assert that Ms. Jordan's nose was covered in soot at the time the body was taken by paramedics.

(10)

A day after Ms. Jordan's death, her mother received a call from the medical examiner's office asking if she would agree to her deceased daughter's brain being donated.  Mrs. Cynthia Jordan, grieving the loss of her child, answered with an exclamatory no and hung up the phone.  Sometime shortly after, Mrs. Cynthia Jordan and or other family members spoke with Chief Code Compliance Officer Maurice Bruce and were told that any lawsuit brought against the City would fail because the deceased died from a "brain aneurysm."  Within the incident report, furnished to the Jordan Estate over a month later on June, 8th, 2021, the property owner is recorded as stating the property was last "inspected in 2015" and that the deceased, Shamika Jordan, "moved in last year, no major repair or electrical repairs were done", directly implicating and highlighting the city's Chief Code Compliance Officer Maurice Bruce and his failure to enforce the city's codes.

(11)

More than six months after Shamika Jordan's death, her mother received a letter from the Medical Examiner's Office stating that her daughter's brain would be returned.  Having abruptly refused to consent to the taking of her daughter's organs and possessing strong spiritual and religous objections to the practice, Mrs. Cynthia Jordan became distraught and has since suffered emotional anguish.

Shamika Jordan's organs, taken without consent, have yet to be returned to her family as indicated in the Medical Examiner's letter.  Shamika Jordan was survived by one child.

(12)

At the time of both deadly fires, Benton Harbor residents were unknowingly living in an emergency situation.  "In 2020, nearly half of the city's fire hydrants weren't working properly and a portion of Benton Harbor neighborhoods' water mains were too small to provide adequate water pressure to the hydrants, according to a capacity study done recently by Fleis & Vandenbrink. F&V, which is the company that manages Benton Harbor's water filtration plant and distribution system." (*HP Staff Writer and Wrege*).  The report states verbatim: "Based on a hydrant flow study conducted in summer 2020 by Wachs Water (Xylem), 235 of the 524 hydrants were identified as deficient, with defects ranging from minor issues to major defects that render the hydrant incapable of producing any flow.  Significant deficiencies have been identified in the water distribution system per Act 399 and SDWA to provide customers with reliable, safe drinking water. The existing distribution system also fails to meet primary and secondary level of service goals as established.  The following specific gaps are identified for additional review:

▪ The water system is undersized to provide required fire flow.

▪ Valving is insufficient to properly control flow.

▪ Proper looping is deficient resulting in stagnant water and reduced pressures.

▪ Transmission lines are oversized and designed to service a larger area and population.

▪ Fire Hydrants are spaced too far apart and not working properly (F&V. *Benton Harbor TMF Draft Report*. Accessed 23 May 2022)

(13)

Approximately ten years before Shamika Jordan's death in a house fire, The Herald Palladium reported "Three families are homeless after fire ripped through a three-unit apartment house early Thursday morning.  Firefighters said their efforts were hampered by the failure of two hydrants.  Firefighters were called shortly after 2 a.m. to 187 Lake Ave., a two-story, multi-family apartment house.  Fire Lt. Jeff Tipton said when the fire department arrived, smoke was billowing from the upper level on all four sides of the house." (*HP Staff Writer and Swidwa*).  Nearly ten years later, Plaintiff Mr. Mark Hackney lost his wife and kids in the exact same residential area where the fire hydrants remain faulty to present.  The same newspaper has documented the City of Benton Harbor receiving one million, eight hundred thousand dollars in federal and state grants since December of 2021, but

no defendant with a statutory duty to do so has announced to residents that the water system is statutorily inoperative and unfit to provide fire protection service for years.

(14)

"In 2015, then-city manager Darwin Watson announced the city was going to use $434,960 it received from the state's Financially Distressed Cities, Villages and Townships Grant Program to replace fire hydrants and water mains.  "The fire hydrants as well as water mains needed to be addressed decades ago," he said at the time. "We'll finally be able to take care of these." (*HP Staff Writer and Wrege*). Prior to, and at the time of both deadly fires at issue in this complaint, the State of Michigan EGLE, the City of Benton Harbor, its officials and concerning department directors, were aware of, or should have been aware of, the imminent danger in the community and the major violations of SWDA 399, yet they failed to take the statutorily prescribed actions, causing the wrongful deaths and sufferings of the Plaintiffs.

(15)

## COUNT I. VIOLATIONS OF DUE PROCESS: DENIAL OF PUBLIC ACCOMMODATION, STATE CREATED EMERGENCY, DISPARATE TREATMENT

(16)

Plaintiffs, realleges paragraphs 1-16.

(17)

Defendants Michigan EGLE, City of Benton Harbor, Benton Harbor Public Safety Department, Mayor Marcus Muhammad, and City Manager Ellis Mitchell committed disparate treatment and created a state of emergency when they violated the fourteenth amendment of constitution, the Civil Rights Act of 1964, SWDA 399, and the Benton Harbor City Code by causing and or allowing the Benton Harbor public water system to become statutorily inoperable, did not warn the public, and failed to create an emergency response plan, substantially contributing to the deaths of four residents and the suffering of their estates.

(18)

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person

of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV.

(19)

"No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

(20)

"All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a.

(21)

"Distribution systems shall have sufficient capacity to meet peak demands, including fire flow demands where fire protection is provided, while continuously maintaining a minimum of 35 psi throughout the distribution system under normal operating conditions and 20 psi throughout the distribution system during emergencies such as fire fighting. (2) The department may prohibit installation of fire hydrants where watermain capacity, system source capacity, storage capacity,

or pressure is inadequate to sustain fire flow demands in addition to normal user demands." Mich. Admin. Code R. 325.11105.

(22)

"When considered necessary for protection of the public health, the department shall notify a supplier of water of the need to make changes in operations, to provide treatment, to make structural changes in existing systems, or to add additional capacity as necessary to produce and distribute an adequate quantity of water meeting the state drinking water standards.  (2) The department shall inspect a waterworks system or a part of a waterworks system, and the manner of operation of the system or part. If upon inspection the department determines the waterworks system to be inadequate or so operated as to not adequately protect the public health, the department may order the supplier of water to make alterations in the waterworks system or its method of operation as may be required or considered advisable by the department to assure the public water supply is adequate, healthful, and in conformance with state drinking water standards." M.C.L. § 325.1015.

(23)

"If water delivered by or the operation of a public water supply is found not to be in compliance with the state drinking water standards, the department shall require the supplier of water to notify its users of the extent and nature of the noncompliance. Notification of users must be in a form and manner prescribed or otherwise approved by the department." M.C.L. § 325.1019.

(24)

"When any duty is or shall be enjoined by law upon any public officer, or upon any person holding any public trust or employment, every willful neglect to perform such duty, where no special provision shall have been made for the punishment of such delinquency, constitutes a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00." M.C.L. § 750.478

(25)

"Emergency situation means any situation confronting a community requiring emergency actions of a lesser nature than a disaster, as defined above, to include, but not limited to, civil disturbances, labor strikes, visits by national or

international dignitaries, and build-up activities prior to an actual disaster." Benton

Harbor Code, Sec. 13-2.

(26)

"The city manager, with the approval of the city commission, is hereby authorized

and directed to create an organization to prepare for community disasters utilizing

to the fullest extent existing agencies within the city. The city manager, as

administrative head of the city government, shall be the director of the emergency

preparedness forces of the city and shall be responsible for their organization,

administration and operation, working through the coordinator." Benton Harbor

City Code, Sec. 13-3.

(27)

"The substantive due process aspect of the Fourteenth Amendment protects against

conscience-shocking deprivations of liberty." In re Flint Water Cases, 960 F.3d 303

(6th Cir. 2020).

(28)

The Defendants caused the Plaintiffs and community at large to suffer a conscience-shocking deprivation of liberty and created a state of emergency by allowing the Benton Harbor public water system to remain inoperable for fire protection services, for at least three years into the present time, without warning the public or mobilizing emergency response plans.  In causing the Benton Harbor public water system to be secretly inoperative for fire protection, the Defendants veered from the process of law and denied statutory protections owed to the Plaintiffs and community at large, causing the wrongful deaths of the Plaintiffs and sufferings of their families.

(29)

## COUNT II. WILLFUL NEGLECT OF DUTY & STATE CREATED EMERGENCY

(30)

Plaintiffs reallege paragraphs 1-30.

(31)

The Defendants (EGLE and its Dir. Liesl Clark, the City of Benton Harbor, and Mayor Marcus Muhammad) committed willful neglect of duty and created a state of emergency when they acted with deliberate intentions to misbehave and engage in wrongful conduct by willfully failing to warn the

Benton Harbor community about their public water system's inability to adequately protect them from fires, thereby creating an unknown state of emergency.

(32)

"When any duty is or shall be enjoined by law upon any public officer, or upon any person holding any public trust or employment, every willful neglect to perform such duty, where no special provision shall have been made for the punishment of such delinquency, constitutes a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00." Mich. Comp. Laws Ann. § 750.478 (West).

(33)

"For purposes of the statute setting forth the offense of willful neglect of duty by a public officer, willful neglect of a duty required by law to be performed by an officer, i.e., deliberate forbearance, necessarily entails the intent to intentionally, knowingly, and purposely misbehave and engage in wrongful conduct." People v. Waterstone (2012) 818 N.W.2d 432, 296 Mich.App. 121.

(34)

The Defendants committed egregious and outrageous willful neglect of duty,

shocking the consciousness of a reasonable person, when for three consecutive years into the present, they have acted with deliberate forbearance to willfully and consciously refrained from warning the community about the inoperable and or inadequate fire protection services of the Benton Harbor public water system, causing the wrongful deaths of the Plaintiffs and anguish of their surviving relatives.

(35)

## COUNT III. GROSS NEGLIGENCE -ALL DEFENDANTS

Plaintiffs, realleges paragraphs 1-35.

(36)

As elected, appointed, and certified professionals, the Defendants owed the Plaintiffs and the community at large, a duty of standard of care and breached that standard when they failed to enforce the Benton Harbor City housing codes, maintain a statutorily adequate public water system, warn the community of the absence of fire protection services, and honor the refusal of an anatomical gift, thereby acting with wanton disregard for the rights and safety of city residents; causing the deaths of the Plaintiffs and the extreme mental anguish and loss of enjoyment of life for their estates.

(37)

"No owner, agent or person in charge of a dwelling or dwelling unit shall allow any person to occupy the same as a tenant or lessee or for a valuable consideration unless the dwelling or dwelling unit shall have been inspected subsequent to its most recent occupancy and determined to be in compliance with the provisions of this article as evidenced by a certificate of occupancy issued by the housing inspector as provided by this article." Benton Harbor City Code, Sec. 20-70.

(38)

"In the absence of an express, contrary indication by the individual set forth in the refusal, an individual's unrevoked refusal to make an anatomical gift of his or her body or body part bars all other persons from making an anatomical gift of the individual's body or body part." M.C.L. § 333.10107.

(39)

A gross negligence claim must establish (1) that the Defendant "owed a duty of care to the Plaintiff", (2) that the Defendant "breached that duty", and (3) that "the breach proximately caused his/hers damages." *See Pathways, Inc. v. Hammons,* 113 S.W.3d 85, 88 (Ky.2003) (citing *Mullins v. Commonwealth Life Ins. Co.,* 839 S.W.2d 245 (Ky.1992)).  The Plaintiff "must demonstrate "an element either of malice or willfulness or such an utter and wanton disregard of the rights of others as from which it may be assumed that the act was malicious or willful." *Phelps v.*

*Louisville Water Co.,* 103 S.W .3d 46, 51 (Ky.2003). <u>McIntosh v. Data RX Mgmt.,</u> <u>Inc.,</u> No. 5:13-CV-140-TBR, 2014 WL 774609, at *5 (W.D. Ky. Feb. 25, 2014).

(40)

The Defendants acted in gross negligence when they knowingly, willfully, and purposefully failed to perform the legal duty of care, i.e, maintain the public water system and adequate operation levels, inspect homes for safety issues before tenants move in, possess and use standard fire protection equipment and protocols, and refrain from taking organs from deceased persons without the proper permissions.   By committing the aforementioned acts, the Defendants each breached the respective standards of care owed to the Plaintiffs, thereby causing their deaths and sufferings.

(41)

The Defendants knowingly, purposefully, and with wanton disregard for the Plaintiffs' rights and safety, breached the duty of care owed to the Plaintiffs and the community of Benton Harbor when they caused the Benton Harbor public water system to become and remain inoperative for fire protection services, did not warn the community, failed to create an emergency response plan, failed to perform any search and rescues when arriving to the scenes of tragic fires, handled the body of a

deceased community member with an inhumane lack of dignity, and wrongfully retained at least one organ of Shamika Jordan's without consent.

(42)

## COUNT IV. WRONGFUL DEATH- STATE OF MICHIGAN & CITY OF BENTON HARBOR DEFENDANTS

Plaintiffs, realleges paragraphs 1-42.

(43)

The Defendants (The Department of Environment, Great Lakes, and Energy, Dir. Liesl Clark, Benton Harbor City, Benton Harbor Public Safety Department, Mayor Marcus Muhammad, City Manager Ellis Mitchell, Dir. Daniel McGinnis, Fire Marshall Brian Kazmierzak, and Chief Code Compliance Officer Maurice Bruce) caused the wrongful deaths of the Plaintiffs by allowing the public water system to become inoperative for fire protection services yet continuously holding themselves out as able to provide adequate fire protection.  The Defendants wrongfully caused the deaths of the Plaintiffs when they failed to warn the public about the absence of the fire protection services, create emergency response plans, inspect housing units upon new occupancies, and also refrained from performing search and rescue procedures when arriving at burning residential homes.

(44)

"Whenever the death of a person, injuries resulting in death, or death as described in section 2922a1 shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, the person who or the corporation that would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured or death as described in section 2922a, and although the death was caused under circumstances that constitute a felony." Mich. Comp. Laws Ann. § 600.2922 (West).

(45)

"Wrongful-death action brought on behalf of the deceased is the same legal action—with all of its statutory and common-law limitations—that the deceased could have brought if the injuries the deceased sustained because of the wrongful act, neglect, or fault of another had not caused death." Simpson v. Alex Pickens, Jr., & Assocs., MD, PC, 311 Mich. App. 127, 874 N.W.2d 359 (2015). "Three requirements for a wrongful-death action are (1) a death; (2) that the death be caused by wrongful act, neglect, or fault of another; and (3) that the wrongful act, neglect, or fault of another be such that, if death had not ensued, a cause of action could have been filed against the responsible party and damages recovered from

them." <u>Simpson v. Alex Pickens, Jr., & Assocs., MD, PC</u>, 311 Mich. App. 127, 874 N.W.2d 359 (2015).

(46)

Through their willful neglect of duties in failing to comply with statutory mandates and warn the community of inadequate fire protections, not enforcing housing codes, and breaching their professional duties and standards, the Defendants have violated their public trusts by participating in a habitual pattern non-compliance and gross negligence, wrongfully caused the deaths of the Plaintiffs.

(47)

**COUNT V. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

(48)

Plaintiffs reallege paragraphs 1-48.

(49)

The Defendant, WMU School of Medicine Medical Examiner and Forensic Services, intentionally inflicted emotional distress upon the Plaintiff Estate of Shamika Jordan when they converted an organ of the deceased's without legal right, mailed correspondence to her mother stating the organ would be returned, and failed to make contact, or follow-up about the issue any further to date.

(50)

To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. Hayley v. Allstate Ins. Co., 262 Mich. App. 571, 686 N.W.2d 273 (2004). "The conduct complained of in a suit alleging intentional infliction of emotional distress must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Hayley v. Allstate Ins. Co., 262 Mich. App. 571, 686 N.W.2d 273 (2004). "Sufficient proof must be adduced of intentional infliction and something much more than simply aggravation must be shown to make out a case of intentional infliction of emotional distress under Michigan law; this requires plaintiff to show more than hurt feelings, but seeking and receiving medical treatment is not a condition precedent to satisfying the element of extreme emotional distress. Gilliam v. Ordiway, 147 F. Supp. 3d 664 (E.D. Mich. 2015).

(51)

The Defendant exhibited extreme and outrageous conduct when they called the representative of Shamika Jordan's estate to seek permission for an anatomical gift, failed to receive permission, and then contacted the estate claiming to have retained the organ and promising to send it back without ever doing so or

proffering further explanation.  To either take an organ without permission and or falsely alert an estate to such an reprehensible act without further clarification is reckless and or intentional.  The actions of the Defendant have caused the Plaintiff's estate severe mental and emotional anguish.  As such, the Plaintiff is entitled to compensation and equitable relief to be made as whole as possible for injuries.

## DAMAGES

### (52)

A "jury may be permitted to assess punitive damages in an action under § 1983 when a defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally-protected rights of others and such threshold applies even when the underlying standard of liability for compensatory damages is one of recklessness. 42 U.S.C.A. § 1983. Smith v. Wade, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983).   The calculation of future damages for types of future damages described in subsection (1)(b) shall be based on the costs and losses during the period of time the plaintiff will sustain those costs and losses. M.C.L. § 600.6305.  "A person who violates this act or the rules promulgated under this act or an order issued pursuant to this act is guilty of a misdemeanor punishable by a fine of not more than $5,000.00 for each day of

violation, or by imprisonment for not more than 1 year, or both." M.C.L. § 325.1021.

(53)

**RELIEF REQUESTED**

Plaintiffs, reallege paragraphs 1-53.

(54)

As a result of the aforementioned legal violations suffered by the Plaintiffs and caused by the Defendants, the named estates are enduring loss of enjoyment of life, mental anguish, outrage, loss of sleep, and emotional distress.

(55)

**Wherefore**, the Plaintiff respectfully requests that this Honorable Court enter a Judgment in her favor against Defendants for the following relief:

I.   That $28,580,000.00 be paid in compensatory, derivative, hedonic, and exemplary damages to the Plaintiffs to compensate them for the mental and emotional anguish, loss of life, enjoyment, and consortium they will continue to endure; and also to ensure that other communities do not suffer a similar harms.

II.  That an order be granted directing the City of Benton Harbor to immediately

adopt and employ the "Shamika Jordan Fire Safety Prevention Maintenance

Resolution"

III.  That $500,000.00 be paid as an award of interest, costs, and reasonable

attorney fees;

IV.  Any other compensatory, derivative, hedonic, exemplary, or equitable relief

that this Honorable Court deems appropriate at the commencement of trial.

**THE J.R. BEASON FIRM, PLLC.**
Attorney John R. Beason III
for the Plaintiff Estates

Dated: May 26th, 2022                    By: /s/ John R. Beason III, Esq.
                                         The J.R. Beason Firm PLLC.
                                         D.C. Bar No.: 1721583
                                         IBA Bar No.: 1522438
                                         853 McAlister St.
                                         Benton Harbor, MI 49022
                                         (269) 213-1426
                                         JRBeason3@TheJRBeasonFirm.com

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

MARK HACKNEY, Representative
for the ESTATES OF AMANDA
HACKNEY, MARKEESE DORTCH,
and SHA'TARI RAZOR;
SAMANTHA JORDAN, CYNTHIA
JORDAN, Representatives for the
ESTATE OF SHAMIKA JORDAN

     Plaintiffs,                                          Case No.

v.                                                                     Hon. Robert J. Jonker

MICHIGAN DEPARTMENT OF
ENVIRONMENT, GREAT LAKES,
& ENERGY, and its Director
LIESL CLARK, Individually
and in her official capacities;
CITY OF BENTON HARBOR, and its
PUBLIC SAFETY DEPARTMENT;
MAYOR MARCUS MUHAMMAD,
Individually and in his official capacities;
CITY MANAGER, ELLIS MITCHELL,
Individually and in his official capacities;
FIRE MARSHALL, BRIAN
KAZMIERZAK, Individually and in
his official capacities; PUBLIC
SAFETY DIRECTOR, DANIEL E.
MCGINNIS JR.; Individually and in

his official capacities; CHIEF CODE
COMPLIANCE OFFICER, MAURICE
BRUCE; Individually and in his official
capacities; ST. JOSEPH PUBLIC SAFETY
DEPARTMENT; WESTERN
MICHIGAN UNIVERSITY SCHOOL
OF MEDICINE MEDICAL EXAMINER
AND FORENSIC SERVICES, and its
Director DR. JOYCE DEJONG, individually
and in her official capacities ;and
any unknown, yet to be discovered liable
persons or entities.

      Defendants.

## **JURY DEMAND**

    To the extent that a jury trial is allowed with regard to any of the issues as set forth above, Plaintiffs mercifully demand such.

                 **THE J.R. BEASON FIRM, PLLC.**
                 Attorney John R. Beason III
                   for Plaintiff Estates

Dated: May 26th, 2022

                 By: /s/ John R. Beason III, Esq.
                 Attorney John R. Beason III
                 D.C. Bar No.: 1721583
                 IBA Bar No.: 1522438
                 853 McAlister St.
                 Benton Harbor, MI 49022
                 (269) 213-1426
                 JRBeason3@TheJRBeasonFirm.com